**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DANIEL P. NOVAK and L & N** ) | |
| **SECURITY, INC.,** ) | |
| ) | **2:05-cv-00897** |
| **Plaintiffs,** ) | |
| **v.** ) | |
| ) | |
| **CITY OF PITTSBURGH,** ) | |
| ) | |
| **Defendant.** ) | |

<u>**MEMORANDUM OPINION AND ORDER OF COURT**</u>

Pending before the Court for consideration and disposition are Defendant's MOTION

FOR SUMMARY JUDGMENT *(Document No. 34)* and Plaintiffs' MOTION FOR PARTIAL

SUMMARY JUDGMENT *(Document No. 36)*.  After a thorough review of the parties' briefs,

the appendices attached thereto, the record evidence and relevant legal authorities, the Court

concludes that the Defendant's Motion for Summary Judgment will be GRANTED and the

Plaintiffs' Motion for Partial Summary Judgment will be DENIED.

**BACKGROUND**

The Plaintiffs are Daniel Novak, a police officer employed by the City of Pittsburgh, and

L&N Security, Inc. ("L&N"), a corporation which Novak formed to engage in the business of

scheduling police officers' secondary employment.  Specifically, L&N focuses on staffing,

scheduling and administering off-duty officers who work traffic obstruction details.  Other police

officers have developed similar side businesses which focus on scheduling secondary

employment of off-duty officers at sporting events, concerts, nightclubs, and other events.  L&N

received a ten percent commission on such work.

Pittsburgh police officers are authorized to supplement their income by engaging in secondary employment. For many years, such secondary employment was regulated by Police Bureau Order No. 29-1. On April 6, 2004, then Chief of Police Robert W. McNeilly, Jr. issued a new policy governing secondary employment through Chief's Order No. 05-004 (the "Order"). The new regulation states, in relevant part:

> Effective immediately, permit requests coming to the Chief's Office for approval must be sent to the Special Events and Permits Office located at Police Headquarters in room 154. Personnel assigned to that office will review the request and insure compliance prior to approval. The permit requests included, but are not limited to: Special Event Permits, Traffic Obstruction Permits, Block Party Permits. Any special requirements listed in the permit will be addressed and handled by the Special Events and Permits Office, such as: Hiring off-duty police officers, Invoicing for officers hired, Providing "No Parking" signs.

The Order "prohibits officers from working [traffic obstruction jobs] unless they go through the Office of Special Events." The City receives a ten percent fee on such work and received approximately $65,000 from roughly May through November 2005. McNeilly Deposition at 91.

## STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). The non-moving party must raise "more than a mere scintilla of

evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249).  Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.  *Id*. (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

## DISCUSSION

Plaintiffs allege that Chief's Order No. 05-004 is unconstitutional in that it violates their right to Equal Protection and their right to Due Process.  Specifically, Plaintiffs contend that the City has established an irrational system of regulation under which certain officers have retained their "side businesses" of arranging secondary employment, while Plaintiffs' business has been effectively usurped by the City.  Plaintiffs acknowledge that "the City may regulate secondary employment in an even-handed manner or ban it entirely."  Plaintiffs' Brief in Support of Partial Summary Judgment at 1.  Plaintiffs have not produced any evidence of improper motive or discriminatory animus on the part of the Defendant, but rather, argue the disparate impact of the Order.[1]

---

[1]Plaintiffs' Brief in Opposition and Supplemental Appendix seeks to create an issue of fact by attributing an improper motive to Chief McNeilly.  In December 2005, Chief McNeilly authored a report which concluded that the "pilot program" had been extremely successful and recommended that the program be expanded to encompass scheduling of all secondary employment.  The Report noted that the City used a computer system sold by Cover Your Assets, LLC.  Chief McNeilly was not retained by incoming Mayor O'Connor in January 2006, and in late February McNeilly apparently entered into a business partnership with Cover Your Assets.

3

Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution provides: "No State shall ⋯ deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The Equal Protection Clause announces the "fundamental principle" that "the State must govern impartially," *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 587 (1979), and "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Alleged violations of the Equal Protection Clause are subjected to strict scrutiny if such violations involve a fundamental right or are based on a suspect classification. Otherwise, the decision at issue is accorded a "rational basis review," in which the Plaintiffs must undertake the heavy burden to establish that the action was not rationally related to any legitimate government purpose. *Leheny v. City of Pittsburgh*, 183 F.3d 220, 226 (3d Cir. 1999). As no fundamental right or suspect class is involved in the instant case, the Court will apply a "rational basis" review.[2]

In essence, Plaintiffs complain that the City's policy has usurped their business while leaving the side businesses of similarly situated officers in place and unaffected. For example, Chief's Order No. 05-004 does not affect the scheduling or administration of secondary

_____

The Court finds that these facts do not defeat summary judgment as they are wholly irrelevant to the basic issue(s) of the instant case. Plaintiffs' complaint is with the initial policy issued in April 2004 that created the pilot program, almost two years earlier. Ironically, the recommendation made in the December Report, if adopted, would eviscerate Plaintiffs' Equal Protection theory.

[2]Plaintiffs apparently recognize that the "rational basis" standard applies and have argued that the City's policy is "irrational."

employment at Steelers or Pirates games.  The elements of a "selective enforcement" equal

protection claim are: (1) the person, compared with others similarly situated, was selectively

treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis

of impermissible considerations, such as race or religion, to punish or inhibit the exercise of a

constitutional right, or by a malicious intent to injure. *Homan v. City of Reading*, 963 F.Supp.

485, 490 (E.D.Pa.1997) (*quoting Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d. Cir.1995)

and *Government of Virgin Islands v. Harrigan*, 791 F.2d 34, 36 (3d Cir.1986)).

The Court finds that such disparate treatment does not violate the Equal Protection

Clause.  The City's decision to perform some scheduling functions was motivated by fiscal

reasons which are unquestionably legitimate.  *Leheny*, 183 F.3d at 226.  The Constitution does

not require the City to address all scheduling functions at the same time.  Defendant explains that

the Order represented a "pilot program" to evaluate whether the revenues expected to be

generated by the program would justify the investment of time and resources by the Department.

The City was concerned that an immediate change to in-house scheduling of ***all*** secondary

employment would be too massive an undertaking at one time.  Therefore, the City selected a

subset of secondary employment opportunities.  McNeilly Deposition at 46-47.  The Special

Events Office was already handling the permit-related aspects for traffic obstruction details and

the City believed that scheduling the secondary employment on traffic obstruction details would

not cause an undue increase in workload.  *Id.*  Scheduling night club details, by contrast, is a

massive undertaking.  *Id.* at 45-46.  Chief Dominic Costa similarly testified that he wanted to

look at phasing in the scheduling of other secondary employment.  Costa Deposition at 22.  Chief

Costa noted instances under the prior system in which notifications for emergencies were not

communicated and explained the large impact of street closures on the general public.  Costa Deposition at 30, 32, 35.  Thus, it was rational for the City to initiate a pilot program to schedule traffic obstruction details but not other secondary employment.

The Equal Protection Clause does not require a new program "to cover every evil that might conceivably have been attacked." *McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802, 808-09 (1969).  Limited pilot programs are permissible and the government may regulate "one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Williamson v. Lee Optical Inc.*, 348 U.S. 483, 489 (1955). The case relied upon by Plaintiffs, *Bowman v. Township of Pennsauken*, 709 F. Supp. 1329 (D.N.J. 1989) (enjoining a resolution requiring disparate treatment of off-duty officers engaged in security work compared to non-security work), is distinguishable.  In *Bowman*, the Court deemed the government's attempt to shift the entire burden of liability to private employers, even when the officer responded in his official capacity, to be irrational.  No such factor is present in the instant case.  Moreover, the analysis in *Bowman* must be rejected to the extent that it is inconsistent with *McDonald* and *Williamson*.  *See Decker v. City of Hampton, Virginia*, 741 F. Supp. 1223, 1228-29 (E.D. Va. 1990) (rejecting Equal Protection claim by police officer barred from working as private detective even though regulation was both overinclusive and underinclusive).  For all these reasons, Chief's Order No. 05-004 does not violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.


Due Process Claim

Plaintiffs do not complain of a lack of procedural due process.  Rather, they allege that

6

they have been precluded from pursuing their chosen occupation.  The right to follow a chosen profession free from unreasonable governmental interference comes within both the substantive liberty and property protection concepts of the Fifth and Fourteenth Amendments.  *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1259 (3d Cir. 1994).

A party who asserts a property interest protected by the Due Process Clause "must go beyond showing an unsubstantiated expectation of the benefit." *Id.* at 1256.  To succeed, Plaintiffs must demonstrate an entitlement to a property interest created expressly by state law or policy or by a mutually explicit understanding between the government employer and the employee.  Examples of cognizable interests include the low bidder's expectation to obtain a competitively bid contract or a teacher's interest in retaining a tenured position. *Id.* at 1257.  No such entitlement has been established by Plaintiffs.  At most, the evidence demonstrates a long-standing awareness by the City that various officers had side businesses scheduling secondary employment.  However, there is no contract or regulation that would create some sort of exclusive franchise or property interest for those officers.  In *Piecknick*, the Court of Appeals held that a policy that referred all towing business in Zone 1 to Plaintiff for several years did not create a protected property interest for the towing operator.  Similarly, in *Swinehart v. McAndrews*, 221 F. Supp.2d 552 (E.D. Pa. 2002), the Court held that a county constable had no property interest in continuing to receive work serving warrants.  *See also Latessa v. New Jersey Racing Comm'n*, 113 F.3d 1313, 1318-19 (3d Cir. 1997) (rejecting Due Process claim by racing judge barred at one racetrack despite history of low turnover in position).  Like the Plaintiffs in *Piecknick* and *Swinehart*, Novak and L&N, and the other officers, are acting as service providers, rather than employees.  They were savvy enough to recognize and fill a market niche for the

7

provision of secondary employment scheduling services that the City has now belatedly filled.

The Constitution simply does not confer monopoly protection in perpetuity for the various

officers' scheduling businesses.  As noted in *Piecknick*, even if a contract with the City could be

implied, contracts for services having no specific term are terminable at will.  36 F.3d at 1259.

Accordingly, Plaintiffs have not established a property interest which is entitled to protection

under the Due Process Clause.

   The liberty interest in employment that is protected by the Due Process Clause is fairly

narrow.  Individuals do have a protected interest in the right to work for a living in the common

occupations of the community.  *Id.*  For example, decisions involving the revocation of a law or

medical license may implicate this interest.  However, as the Court noted in *Piecknick*:

> The Constitution only protects this liberty from state actions that threaten to
> deprive persons of the right to pursue their chosen occupation.  State actions that
> exclude a person from one particular job are not actionable in suits ... brought
> directly under the due process clause.  It is the liberty to pursue a calling or
> occupation, and not the right to a specific job, that is secured by the Fourteenth
> Amendment.

*Id.* at 1259-60 (citations omitted).  Under this standard, Plaintiffs cannot establish a protected

liberty interest.  Novak is not deprived of his ability to make a living, and indeed, continues to be

employed as a City police officer.  Moreover, the City has not prevented Plaintiffs from

competing in the scheduling secondary employment marketplace.  Plaintiffs remain free to

compete for work from nightclubs, community groups, sports teams and other organizations that

are not covered by Chief's Order No. 05-004.  *Piecknick* rejected a similar claim of a protected

liberty interest, explaining that the towing operator was still able to engage in the towing

business.  36 F.3d at 1260.  In *Swinehart,* the Court explained that defendants' ban on process

8

serving work had not prevented the constable from securing alternative work or from performing the core functions of his chosen profession as a constable. 221 F. Supp.2d at 557.

Plaintiffs do not seriously contest the principles set forth above. Rather, Plaintiffs contend that genuine issues of material fact exist which would make the granting of summary judgment inappropriate under the circumstances. The Court cannot agree. Even construing every fact in the light most favorable to Plaintiffs, they have failed to establish the existence of a property right or a liberty issue protected by the Due Process Clause. Indeed, in *Piecknick,* the Court of Appeals upheld the rejection of similar claims for failure to state a claim pursuant to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Under the more-extensive evidentiary record of the instant case, no reasonable factfinder could conclude that Plaintiffs have established a violation of the Due Process Clause.

### CONCLUSION

For the reasons set forth above, the Court finds that the City has not violated the rights of Plaintiffs under either the Equal Protection Clause or the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

An appropriate order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DANIEL P. NOVAK and L & N** | ) |
| **SECURITY, INC.,** | ) |
| | )   **2:05-cv-00897** |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| **CITY OF PITTSBURGH,** | ) |
| | ) |
| Defendant. | ) |

AND NOW, this 27th day of November, 2006, in accordance with the foregoing
Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the
Defendant's MOTION FOR SUMMARY JUDGMENT *(Document No. 34)* is **GRANTED** and
Plaintiffs' MOTION FOR PARTIAL SUMMARY JUDGMENT *(Document No. 36)* **DENIED**.
The clerk shall docket this case closed.

BY THE COURT:

s/  Terrence F. McVerry
United States District Court Judge

cc:    Adrian N. Roe, Esquire
Email: aroe@watkinsdulac.com

Hugh E. McGough, Esquire
Email: Hugh.McGough@city.pittsburgh.pa.us
Jacqueline R. Morrow, Esquire
Email: jacqueline.morrow@city.pittsburgh.pa.us
Michael E. Kennedy, Esquire
Email: michael.kennedy@city.pittsburgh.pa.us
Susan E. Malie, Esquire
Email: susan.malie@city.pittsburgh.pa.us